IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LARRY FISCUS,                          )
                                       )
                 Plaintiff,            )
                                       )
        v.                             )        1:18-cv-1010
                                       )
CITY OF GREENSBORO, North Carolina,    )
                                       )
                 Defendant.            )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

        Plaintiff Larry Fiscus initiated this action on December 7, 2018, alleging that the above-named Defendant, the City of Greensboro, violated both his constitutional and statutory rights by failing to promote him to the rank of Lieutenant over other candidates in the Greensboro Police Department. (ECF No. 1.) Plaintiff claims violations of the Due Process and Equal Protection Clauses of the U.S. Constitution, the federal Age Discrimination in Employment Act of 1967 ("ADEA"), and the Law of the Land Clause of the North Carolina Constitution. (ECF No. 1 ¶¶ 25–41.) Presently before the Court is Defendant's Motion for Summary Judgment as to all claims.[1] (ECF No. 16.) For the reasons that follow, the Defendant's motion is granted.

---

[1] Related to this Memorandum Opinion and Order is a separate Order to be filed contemporaneously regarding motions by both parties to seal documents in this case.

## I.    Background

Plaintiff is a white male who is currently fifty-two years old.  (ECF Nos. 1 ¶ 3; 16-7.)
He has worked for the Greensboro Police Department ("the Department") since 1996 and
has served as a Sergeant since 2007, earning a number of awards and distinctions throughout
his career.  (ECF No. 1 ¶¶ 3, 13, 17.)

To become eligible for a promotion from Sergeant to Lieutenant in the Department,
an officer must achieve one of the top twenty scores on an interactive assessment during a
given cycle, serve as a Sergeant for at least one year, earn satisfactory performance evaluations,
and compile an "accomplishment record" detailing their work.  (ECF No. 16-1 at 2
(Greensboro Police Directive 6.6.3).)  All candidates who satisfy each requirement are placed
on an eligibility list for a two-year period, (ECF No. 1 ¶ 21), and the Chief of Police has
discretion to select candidates from that pool, (ECF No. 16-1 at 2).  The Chief typically meets
with his Deputy Chiefs throughout the year to identify job openings and "methodically go
through every person on the list" before making the final decisions for promotions at every
level.  (ECF No. 16-2 at 18–21.)

Plaintiff first became eligible for a promotion to Lieutenant in 2014.  (ECF No. 1 ¶ 21.)
During the two-year eligibility period that followed, the Chief promoted ten Sergeants to the
rank of Lieutenant but did not promote Plaintiff.  (*See* ECF No. 16-7.)  At the close of this
period in 2016, the Department administered another interactive assessment, and Plaintiff
scored well enough that he was again eligible to be promoted for the two years that followed.
(ECF No. 1 ¶ 22.)  Over that time period, however, the Chief promoted eight other candidates
without promoting Plaintiff.  (*See* ECF No. 16-8.)

Case 1:18-cv-01010-LCB-JLW   Document 32   Filed 09/14/20   Page 2 of 21

Pointing to his record of service and achievement as well as to the supportive testimony of his colleagues, Plaintiff alleges that he was "subjected to a different set of standards" in the Lieutenant selection process, (ECF No. 22 at 9), and was passed over in favor of "less qualified candidates who are younger and who were minority (i.e. black or Hispanic)," (ECF No. 1 ¶ 23). Defendant has now filed for summary judgment on all counts.

## II.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted). "It is axiomatic that in deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). That means that a court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569, and thus must "usually" adopt "the [nonmovant's] version of the facts" even if it seems unlikely that the plaintiff would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

However, when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Moreover, "the mere existence of *some* alleged factual dispute between the

3

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The Court's analysis will proceed as follows. First, because Plaintiff's claims under the Due Process Clause of the U.S. Constitution and the Law of the Land Clause of the North Carolina Constitution are closely related, the Court will address both claims together. Second, the Court will consider Plaintiff's claims of race and sex discrimination under the Equal Protection Clause. Third, and finally, the Court will analyze Plaintiff's claims of age discrimination under the ADEA.

## III.    Due Process

Plaintiff first alleges that "Defendant's actions have denied Plaintiff due process of law as mandated by the Fourteenth Amendment to the United States Constitution and as actionable under 42 U.S.C. § 1983." (ECF No. 1 ¶ 26.) Plaintiff additionally brings a state claim under the Law of the Land Clause, (*id.* ¶ 40 (citing N.C. Const. art. I, § 19)), a provision in the North Carolina Constitution that the state Supreme Court has held to be "synonymous" with due process, *Tully v. City of Wilmington*, 810 S.E.2d 208, 216–17 (N.C. 2018).

### A.    The Fourteenth Amendment of the U.S. Constitution

The Fourteenth Amendment's Due Process Clause bars a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. It "requires only fair and adequate procedural protections" as opposed to a particular result. *Tri County Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002).

4

Section 1983 provides a civil cause of action for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A claim under this statute may be brought against a municipality "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" that is prohibited. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

There are three elements a plaintiff must satisfy in order to succeed on a Due Process claim. First, he must "demonstrate that he had a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (citing *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)). Second, he must show that the violation of his due process "was caused by 'some form of state action.'" *Id.* (citation omitted). Third, and finally, he must prove that the procedures the state used were "constitutionally inadequate." *Id.* (quoting *Iota Xi Chapter*, 566 F.3d at 145).

Thus, the Court must first consider the nature of Plaintiff's employment and whether it confers to him a cognizable property interest in a promotion to Lieutenant. In order to establish that one has a cognizable property interest, "a person clearly must have more than an abstract need or desire" for a benefit and more than a "unilateral expectation." *Bd. of Regents of St. Colleges v. Roth*, 408 U.S. 564, 577 (1972). Indeed, the Supreme Court has held that one must "have a legitimate claim of entitlement to it." *Id.*

5

North Carolina is an at-will employment state, *Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000) (citing *Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420, 422 (N.C. 1997)), meaning that "the relationship [between employer and employee] is presumed to be terminable at the will of either party without regard to the quality of performance of either party," *Kurtzman*, 347 N.C. at 422. Thus, a property interest in employment may only be conferred by a statute, ordinance, or contract, and simply being "employed by a political subdivision of the state does not itself entitle [one] to tenure, nor does the mere longevity of [one's] prior service." *Tully*, 810 S.E.2d at 217 (citations and quotations omitted) (affirming a summary judgment denying a due process claim after finding that no property interest existed in the case of an at-will city police officer who had not been promoted). Moreover, the North Carolina Supreme Court has held that, in addition to finding that no cognizable property interest exists in continued at-will employment, it is "aware of no authority recognizing a property interest in a promotion." *Id.*

In this case, Defendant has presented evidence that Plaintiff is an at-will employee, (*see* ECF No. 16-5), and Plaintiff has not cited to any statute, ordinance, or contract to contradict this assertion or otherwise establish a cognizable interest in either continued employment or a promotion. Thus, given that there is no dispute as to these material and dispositive facts, the Court concludes that Defendant is entitled to judgment as a matter of law as to Plaintiff's Fourteenth Amendment Due Process Claim.

## B. The Law of the Land Clause of the North Carolina Constitution

Plaintiff next claims that "Defendant has violated Plaintiff's liberty interest in a potential promotion despite his qualifications for same," alleging a violation of the Law of the

6

Land Clause in the North Carolina Constitution. (ECF No. 1 ¶ 40.) As noted above, the North Carolina Supreme Court has held that "'law of the land' is synonymous with 'due process of law,' a phrase appearing in the Federal Constitution and the organic law of many states." *Tully*, 810 S.E.2d at 216–17. While it is true that a decision interpreting the Due Process Clause is a "persuasive, though not controlling, authority for interpretation of the Law of the Land Clause," *Evans v. Cowan*, 510 S.E.2d 170, 174 (N.C. Ct. App. 1999) (citation omitted), a Plaintiff must still establish the same elements as those required in a due process claim, including a threshold showing that "a constitutionally protected property interest exists," *Tully*, 810 S.E.2d at 217 (citation and quotation omitted). As the Court has concluded above, Plaintiff has not demonstrated any cognizable property interest in either continued at-will employment nor in a promotion. Again, given the uncontested nature of these dispositive facts, this Court concludes that Defendant is entitled to judgment as a matter of law on this state law due process claim as well.

## IV.    Equal Protection

Plaintiff next alleges that "Defendant's actions have deprived Plaintiff of equal protection under Federal law pursuant to 42 U.S.C. § 1983[,] in that less qualified minority applicants have been promoted over him." (ECF No. 1 ¶ 30.) The Fourteenth Amendment of the U.S. Constitution provides, in relevant part, that the government may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Courts "may apply the standards developed in Title VII litigation to similar litigation under § 1983," *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994), and the elements to establish a case for employment discrimination are the same under Title VII, § 1981, and § 1983, *Love-*

7

*Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (citations omitted). To succeed on an employment discrimination claim, a plaintiff must provide either "direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988)). Though Plaintiff does not state expressly in his Complaint or subsequent briefs whether he seeks to provide direct or circumstantial evidence, it is apparent that he proffers the latter.[2] Thus, as is standard when evaluating race discrimination claims that rely on circumstantial evidence, the Court uses the *McDonnell Douglas* burden-shifting framework to evaluate Plaintiff's charges.[3] *Love-Lane*, 355 F.3d at 786.

The *McDonnell Douglas* framework first requires a plaintiff to establish a prima facie case of discrimination. *Id.* Should a plaintiff meet this bar, the burden then shifts "'to the employer to articulate some legitimate, nondiscriminatory reason' for the decision not to promote." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Placing this burden on the defendant allows for "a new level of specificity" before shifting the burden in the final stage back to the plaintiff

---

[2] Not only does Plaintiff not attempt to establish a nexus between the evidence and the specific adverse employment action as needed to demonstrate a direct claim, *see Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006), but he also employs the *McDonnell Douglas* test used in disparate impact claims throughout his brief in opposition to summary judgment, (*see* ECF No. 22 at 7–16).

[3] Though Plaintiff at times attempted in his deposition testimony to distinguish his specific record from those of all other promotional candidates, (*see, e.g.*, ECF No. 16-4 at 184 (affirming his belief that he was "more qualified to be a lieutenant than anyone else" on the 2016 eligibility list)), the Supreme Court has held that "the class-of-one theory of equal protection has no application in the public employment context," *Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 607 (2008). Thus, this Court will not infer such a claim.

8

to demonstrate that the stated reason was simply a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981).

The Court initially considers whether Plaintiff has established a prima facie case for discrimination. Doing so "is not onerous," *id.* at 253, and a plaintiff must simply show that he (1) is a member of a protected group; (2) applied for the position in question; (3) was qualified for that position; and (4) was rejected under circumstances that give rise to an inference of unlawful discrimination, *Anderson*, 406 F.3d at 268.

The first element Plaintiff must establish is that he is a member of a protected group. Plaintiff does not expressly identify the alleged group he is a part of in his Complaint but does allege a deprivation "in that less qualified minority applicants have been promoted over him." (ECF No. 1 ¶ 30.) He defines "minority candidates" in his Complaint as "i.e. females or black/Hispanic males," (*id.* ¶ 21), and also as "i.e. black or Hispanic," (*id.* ¶ 23), and incorporates both definitions into his equal protection claim, (*id.* ¶ 29.) In later briefing in opposition to summary judgment, Plaintiff alleges only race-based claims and does not mention gender. (*See* ECF No. 22.)

Irrespective of whether Plaintiff claims his protected class is white persons or white males, however, he is able to satisfy this first element. "Title VII protects whites as well as minorities" and courts have found that "whites" are a "protected group" under this analysis. *Lucas v. Dole*, 835 F.2d 532, 534 (4th Cir. 1987) (citing *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273 (1975)). While some circuits demand an "enhanced showing" when a majority group alleges "reverse discrimination," the Fourth Circuit has repeatedly declined to make a ruling on whether this is necessary; thus, district courts within the circuit have generally declined to

Case 1:18-cv-01010-LCB-JLW   Document 32   Filed 09/14/20   Page 9 of 21

require a heightened bar. *McNaught v. Virginia Community College System*, 933 F. Supp. 2d 804, 818–20 (E.D. Va. 2013) (citing several cases at both the district and circuit levels). The Court follows their lead in this instance.

In addition to finding that "whites" are a protected group, some courts have permitted plaintiffs to bring a "sex-plus theory of discrimination" that alleges discrimination against a "sub-class of white males." *Mason v. N.C. Dept. of Corrections*, 2014 WL 3891360, at *3 n.4 (E.D.N.C. August 7, 2014). This follows from the Fourth Circuit affirming a "sex-plus" protected class of "white women" in an earlier case. *Frazier v. Bentsen*, 92 F.3d 1178, 1996 WL 445090, at *5 (4th Cir. 1996). Thus, whether Plaintiff brings this suit as simply a white person or as a white male, he is able to satisfy the first element of the *McDonnell Douglas* prima facie case and show that he is a member of a protected class.

Second, Plaintiff must show that he applied for the position in question, in this case the post of Lieutenant within the Greensboro Police Department. Both parties agree that this occurred in 2014 and 2016. (*See* ECF Nos. 1 ¶¶ 21, 22; 4 ¶¶ 21, 22.) Third, Plaintiff must show that he was qualified for the position of Lieutenant. This, too, appears to be uncontested. In his deposition, Police Chief Wayne Scott stated that everyone who had met the qualifications under Greensboro Police Department Directive 6.6.3, as Plaintiff had during the period in question, "is essentially promotable." (ECF No. 16-2 at 14.)

Fourth, and finally, Plaintiff must show that Defendant decided not to promote him "under circumstances that give rise to an inference of unlawful discrimination." *Anderson*, 406 F.3d at 268. Plaintiff attempts to meet this bar by making three distinct allegations. First, Plaintiff alleges that, during the eligibility period beginning in 2014, promotions were awarded

10

to "females or black/Hispanic males" disproportionately. (ECF No. 1 ¶ 21.) Second, Plaintiff claims that two black males were promoted to the rank of Lieutenant over Plaintiff despite being either ineligible or demonstrably worse candidates. (ECF Nos. 1 ¶ 22; 22 at 9.) Third, and finally, Plaintiff alleges that "race has been a factor in recommendations" from Deputy Chiefs during meetings where promotions were discussed. (ECF No. 22 at 3.)

The Court first considers Plaintiff's assertion that, in the two-year eligibility period beginning in 2014, "60% of the promotions were awarded to minority candidates i.e. females or black/Hispanic males." (ECF No. 1 ¶ 21.) The data does not support this contention. To the contrary, of the ten Sergeants who were promoted during this period, nine (90%) were male, seven (70%) were white, and seven (70%) were white males. (ECF No. 16-7.) Should the Court take into account all of the eighteen promotions that occurred through both the 2014 and 2016 eligibility periods, the numbers are equally unpersuasive: sixteen of the eighteen officers promoted were male (89%), eleven of eighteen were white (61%), and ten of eighteen were white males (56%). (ECF Nos. 16-7; 16-8.) If anything, such a showing suggests the exact opposite of Plaintiff's claim that white males were the subject of discrimination given that more white men were promoted over a four-year period than all other subgroups combined.

Next, we consider Plaintiff's claims that two black males were promoted over him who were either (1) ineligible for such a promotion due to being subject to a "work plan" or (2) clearly worse candidates based on their experience and evaluations. (ECF Nos. 1 ¶ 22; 22 at 9.) According to Greensboro Police Department Directive 6.6.3, "[t]o be eligible for promotion to the rank of Lieutenant," an officer must (1) have ranked as a Sergeant for at

11

least one year prior to testing; (2) received a "meeting expectations" designation on the two most recent annual reports; (3) scored in the top twenty tested candidates on an interactive assessment; and (4) completed an "Accomplishment Record" outlining the officer's strengths in relation to the position. (ECF No. 16-1 at 2.) Plaintiff alleges that at least one officer, a black male, was promoted despite being on a "work plan" and thus "ineligible for promotion." (ECF No. 1 ¶ 22.) Directive 6.6.3, however, not only does not make any requirements regarding "work plans," but it does not even address them. (*See* ECF No. 16-1 at 2.) Plaintiff additionally states in his deposition that the same officer had not achieved a "meeting expectations" designation or better on his most recent annual evaluations as required under Directive 6.6.3. (ECF No. 16-4 at 150.) The record, however, plainly contradicts this assertion, (*see* ECF No. 21-9), and Plaintiff provides no evidence that either officer in question failed to meet any requirement set forth in Directive 6.6.3.

Plaintiff also provides detailed annual evaluations intended to show that Plaintiff's work was clearly superior to the two officers he references. Directive 6.6.3, however, does not imbue meaningful weight to the annual evaluation process beyond the requirement of earning a "meeting expectations" designation. Instead, the Directive expressly states that "the entire promotional process is designed to assist the Chief of Police to identify and evaluate the promotional potential of the candidates" and does not even require the Chief to consider evaluations, much less view them as dispositive. (ECF No. 16-1 at 2.) Such a grant of discretion is not only typical in the context of public employment but protected under Supreme Court precedent because "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify."

12

*Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 604–05 (2008) (noting that "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns" given that the nature of employment decisions "involve[s] discretionary decision making based on a vast array of subjective, individualized assessments").

In addition to highlighting the annual evaluations, Plaintiff also relies on affidavits from his colleagues as well as his own deposition testimony to press his case. (*See* ECF Nos. 22 at 6; 16-4 at 184.) However, the Fourth Circuit has given little weight to the opinions of co-workers and direct managers in employment discrimination cases, *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir. 1991) (calling them "close to irrelevant"), and has held that a plaintiff's descriptions and conclusory statements "concerning her own qualifications and the shortcomings of her co-workers" do not have sufficient probative force to survive a summary judgment, *Evans*, 80 F.3d at 960 (citing *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). Indeed, it is the "'perception of the decision maker which is relevant,' not the self-assessment of the plaintiff" or his co-workers. *Id.* at 960–61(quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Additionally, simply thriving in one's current role does not compel a supervisor to award a promotion. On the contrary, "promotion involves a consideration of how [an] employee will perform in a different position." *Anderson*, 406 F.3d at 272. And so, even assuming that one could accurately describe the relative merits of two candidates eligible for promotion at a moment in time, pointing simply to levels of achievement at the rank of Sergeant does not demonstrate that a decision regarding promotion to Lieutenant was flawed, much less discriminatory. As noted above, Chief Scott said that all Sergeants who had met

13

the qualifications under Greensboro Police Department Directive 6.6.3 were "essentially promotable" and stated that, once a candidate cleared each of the hurdles in the directive, past performance is "germane" but not dispositive. (ECF No. 16-4 at 121, 130–36, 187.) Thus, Plaintiff has not shown that the two candidates to which he compared himself were either ineligible or inferior candidates for the open Lieutenant positions.

The third and final allegation Plaintiff makes to suggest an inference of discrimination is that "race has been a factor in recommendations" that Deputy Chiefs have given to the Chief during meetings where promotions were discussed.[4] (ECF No. 22 at 3.) Indeed, Chief Scott acknowledged that a Deputy Chief had stated in a meeting that "[w]e need a black male to fill this spot" at least "a handful of times." (ECF No. 16-2 at 27.) As Plaintiff acknowledges, however, Chief Scott "claims he corrected the behavior," (ECF No. 22 at 3), and admonished Deputies "that we obviously don't eliminate anyone based off of any protected class, and so that's an improper discussion," (ECF No. 16-2 at 27). Plaintiff provides no additional evidence to rebut this statement.

Considering the rate of the promotion for white males, the qualifications of comparison candidates, and Plaintiff's lack of any evidence that Chief Scott acted on improper recommendations, the Court concludes that Plaintiff has failed to demonstrate by the

---

[4] Plaintiff additionally goes to great lengths in his briefing to suggest that such meetings were, on their own, improper, calling them "secretive" and "clandestine" and arguing that, by simply holding them, "the City deviated from its written Directive." (ECF No. 22 at 3.) The Directive, however, does not prohibit the Chief of Police from meeting with other members of the Department nor does it proscribe seeking out additional information. (*See* ECF No. 16-1 at 2.) Instead, such a meeting to learn more about candidates for promotion aligns with the spirit of the Directive to "assist the Chief of Police to identify and evaluate" candidates. (*Id.*) Should the Directive be construed as permitting only the activities expressly listed, it would follow that a decision maker could not take into account, for instance, the performance evaluations Plaintiff urges us to consider nor even draw on their own years of experience with candidates. The Court finds such a reading contradictory to the spirit and letter of the Directive and unpersuasive.

14

preponderance of the evidence that these circumstances give rise to an inference of unlawful discrimination and thus Plaintiff is unable to make out a prima facie case on his disparate treatment claim.

Even assuming *arguendo* that Plaintiff were able to make out a prima facie case, the burden would shift to Defendants to "articulate some legitimate, nondiscriminatory reason' for the decision not to promote." *Anderson*, 406 F.3d at 268 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). Chief Scott articulated multiple reasons why he never believed that Plaintiff was the most promotable person on his list, including concerns about his training methods, mistakes by Plaintiff and/or his team in the field, and "a consistent pattern of a lack of leadership and judgment." (ECF No. 17 at 6–10.)[5] Thus, Defendant would meet its burden and shift the burden back to the Plaintiff to show that such reasons were simply pretext for discriminatory activity.

A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The "ultimate question" at this stage is not whether a plaintiff is able to show that defendant's justification is false, but rather "whether the employer intentionally discriminated" based on the impermissible factor in question. *Love-Lane*, 355 F.3d 766 at 788 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000)) ("It is not enough to disbelieve the

---

[5] Plaintiff himself has also articulated additional reasons for Defendant's decision by repeatedly pointing out in his own deposition that he believed Chief Scott was unfairly "mad" at him following a number of incidents and interactions. (*See, e.g.*, ECF No. 16-4 at 84.) Not only that, but Plaintiff asserted that, had Chief Scott not been angry with him, Plaintiff believed he would have been promoted, racial and gender criteria notwithstanding. (ECF No. 16-4 at 135–36.)

defendants here; the fact-finder must believe [plaintiff's] explanation of intentional race discrimination.")

In considering whether or not "a discriminatory reason more likely motived the employer," the Court again considers the evidence presented that the Greensboro Police Department promoted males, white Sergeants, and white males at a higher rate than any comparison group during the time period in question. (*See* ECF Nos. 16-7; 16-8.) Additionally, while Plaintiff enumerates several reasons why he believes Chief Scott did not promote him, (*see* ECF No. 17 at 14–15), he fails to present any evidence that these decisions were based on racial animus.

The Court thus finds that Plaintiff has failed to establish a prima facie case for an equal protection violation. Further, even assuming he could establish a prima facie case, Plaintiff has failed to show that Defendant's legitimate, nondiscriminatory business reasons were a pretext for racial discrimination. The Court therefore concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's Equal Protection Claim.

### C. ADEA

Plaintiff next claims that Defendant discriminated against him based upon his age in violation of the ADEA, 29 U.S.C. § 621 *et seq.* (ECF No. 1 ¶¶ 32–37.) More specifically, Plaintiff alleges that "Defendant refused to promote Plaintiff despite Plaintiff's obvious qualifications for said promotion and in fact promoted younger, less qualified individuals over Plaintiff who did not have the experience, skills or qualifications of Plaintiff." (*Id.* ¶ 35.)

The ADEA creates a cause of action for employees "over the age of 40 who allege discrimination on the basis of age." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). The

statute makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To succeed on such a claim, a plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

When there is no direct evidence of age-based discrimination, as in this case, the Fourth Circuit analyzes the claim by employing the *McDonnell Douglas* three-stage framework, *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019), though the elements to establish the prima facie case are distinct from those under a typical Title VII claim as used above, *compare id.*, with *Anderson*, 406 F.3d at 268.

To establish a prima facie claim under the ADEA, a plaintiff

> must demonstrate that: (1) he was a member of a protected class, i.e., that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA.

*Laber*, 438 F.3d at 430. If the plaintiff establishes the prima facie case, the defendant has the burden of articulating a "legitimate, non-discriminatory reason" for its decision. *Id.* Once the defendant does so, the plaintiff must show by a preponderance of the evidence that "the legitimate reasons offered by the defendant[-employer] were not its true reasons, but were a pretext for discrimination" based on age. *Burdine*, 450 U.S. at 253. As is the case with *McDonnell Douglas* under an equal protection claim, the plaintiff-employee retains the burden of persuasion "at all times." *Id.*

17

There is no meaningful dispute regarding the first three elements of the prima facie case. Plaintiff was forty-six years old when the first promotion occurred in the 2014 eligibility period. (ECF No. 16-7.) As detailed above, Chief Scott viewed all candidates on the eligibility list as being qualified for promotion, (ECF No. 16-2 at 14), and he did not promote Plaintiff, (ECF No. 16 at 1).

Whether Plaintiff is able to establish a prima facie case, then, rests on whether he can satisfy the fourth prong by demonstrating that the Lieutenant positions were filled by applicants who were "substantially younger" than Plaintiff. *Laber*, 438 F.3d at 430.

There is no bright line rule as to what constitutes "substantially younger," *Plankers v. Founders Group International, LLC*, 2019 WL 6119765, *5 (D.S.C. 2019) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)), though courts have worked over time to find a consistent through-line that would provide more guidance in individual cases, *see Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–40 (6th Cir. 2003) (citing dozens of decisions across every circuit and noting both trends and outliers in applying the rule). More recently, however, there is a growing consensus among a small number of circuits that "an age difference of ten or more years is sufficiently substantial, but an age difference of less than ten years is not." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (noting agreement between the Sixth, Seventh, Ninth, and Tenth Circuits).

Though district courts in the Fourth Circuit have not always applied this test, (*see, e.g., Leonard v. Trustees of Cleveland Community College*, No. 1:17-cv-00296, 2019 WL 2076566, at *6 (W.D.N.C. May 9, 2019) (finding that a six-year age difference was enough to establish a prima facie case), the Fourth Circuit and its district courts have generally followed the ten-year

18

rule without adopting it outright, *Plankers*, 2019 WL 6119765 at * 5; *Gomez v. Haystax Technology, Inc.*, 292 F. Supp. 3d 676, 686 n.2 (E.D. Va. 2017).

In line with this persuasive authority, we find that Plaintiff is not able to establish that he was passed over for promotion by candidates who were "substantially younger" and is thus unable to satisfy the fourth prong of his prima facie case. Of the eighteen candidates who were promoted in the 2014 and 2016 eligibility periods, the first seventeen who were named Lieutenants were less than ten years younger than Plaintiff and only the final Sergeant promoted was more than ten years younger. (ECF Nos. 16-7; 16-8.) Indeed, at least two candidates who were promoted were older than Plaintiff,[6] and more than half were within five years of Plaintiff's age. (*Id.*) The eighteen Sergeants promoted to Lieutenant during this time period were on average 4.4 years younger than Plaintiff. (*Id.*)

Even assuming that Plaintiff made out a prima facie case based on the single candidate who was more than ten years younger than he was—which he does not expressly do in his Complaint or in subsequent briefing—this would merely shift the burden to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision under *McDonnell Douglas*. *Laber*, 438 F.3d at 430. In our previous analysis of Plaintiff's claim under the Equal Protection Clause, the Court concluded that Defendant has met this burden. Thus, Plaintiff must then show by a preponderance of the evidence that "the legitimate reasons offered by the defendant[-employer] were not its true reasons, but were a pretext for discrimination" based on age. *Burdine*, 450 U.S. at 253.

---

[6] A third candidate who was promoted to Lieutenant was listed on the 2014 eligibility list as older than Plaintiff and on the 2016 eligibility list as younger than Plaintiff. (ECF Nos. 16-7; 16-8.)

Plaintiff attempts to do so by arguing that Chief Scott falsely asserted that Plaintiff "has no experience in administration." (ECF No. 22 at 15 (citing ECF No. 16-11 at 3).) It is true, as Plaintiff points out, that he has earned high marks for administrative tasks in previous evaluations. (*Id.*) However, Chief Scott and two Deputy Chiefs articulated distinctions between the type of administrative experiences Plaintiff had at the time of promotional decisions and the type the Department valued in selecting Lieutenants. (ECF No. 21-4 at 3 (noting that Plaintiff did not seek to become more "versatile," "broaden[] [his] knowledge," or "gain[] more experience" by taking on additional assignments).) Even if Defendant were able to show that Chief Scott's statement was false, Plaintiff has failed to provide any additional evidence that would lead one to the conclusion that the statement is pretext for age-based animus/discrimination.

Plaintiff also finds fault with Chief Scott "acknowledg[ing] that modern day policing has evolved and [Chief Scott] needs someone to be culturally sound." (ECF No. 22 at 16.) However, Plaintiff fails to show how such a qualification would be pretextual for discrimination based on age. Again, he provides no independent evidence of age-based animus and additionally fails to show that cultural competence was a proxy for age, especially given that over half of the promotions to Lieutenant in this period were awarded to Sergeants within five years of Plaintiff's age who were evaluated based on the same criteria.

Plaintiff has thus failed to meet his burden under the *McDonnell Douglas* test to show discrimination under the ADEA, and the Court concludes that Defendant is entitled to judgment as a matter of law on this statutory claim as well.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that the Defendant's Motion for Summary Judgment, (ECF No. 16), is GRANTED and Plaintiff's claims are Dismissed With Prejudice.

This, the 14th day of September 2020.

/s/Loretta C. Biggs
United States District Judge